J-A09013-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| DANIEL J. FRIEBEN | : | |
| | : | |
| Appellant | : | |
| | : | |
| | : | No. 1206 WDA 2025 |

Appeal from the Judgment of Sentence Entered August 26, 2025
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s): CP-65-SA-0000127-2025

BEFORE: NICHOLS, J., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY NICHOLS, J.: **FILED: July 1, 2026**

Appellant Daniel J. Frieben appeals *pro se* from the judgment of sentence imposed after he was convicted by the trial court in a non-jury trial for trespassing on private property while hunting and violating a game commission regulation[1] following a summary appeal. Appellant argues that the verdict was against the weight of the evidence. After review, we dismiss the appeal due to the substantial defects in Appellant's brief, and because Appellant waived his claims for failure to preserve them before the trial court. Accordingly, the judgment of sentence is affirmed.

The facts of this case were set forth by the trial court as follows:

During deer hunting season on November 30, 2024, state game warden Kolton Boyer of the Pennsylvania Game Commission was dispatched to the King Nature Reserve located off Crow Foot Road in Murrysville. Specifically, it was reported that two hunters

---

[1] 34 Pa.C.S. §§ 2314(a)(1) and 2102(a), respectively.

carrying rifles were seen on the property that was closed to hunting, and they were not properly dressed in orange clothing. Boyer responded to the King Nature Reserve and observed the hunters' vehicles in a parking area. After unsuccessfully attempting to locate the hunters in the woods, Boyer remained at his vehicle and waited for assistance.

Subsequently, Boyer became aware that his supervisor encountered the hunters, [Appellant] and [Gary Amato (Co-defendant)], walking back to their vehicles. Boyer and his supervisor interviewed the hunters and conducted a "field check" of their hunting licenses and equipment. The hunters were wearing typical hunting clothing consisting of camouflage, boots, and orange, and carrying rifles.

Boyer was aware based on his training and familiarity with the area that the hunters were in a location that was not open to hunting. A kiosk in the parking lot also contained the rules and regulations for the King Nature Reserve. Moreover, across from where the hunters' vehicles were parked, a posted sign indicated that hunting was not permitted on the property. The hunters had to pass that sign to reach the trail that they were using. Multiple photographs were admitted into evidence depicting the vehicles, parking lot, signage, and walking trail used by the hunters. A map of the area was also admitted into evidence.

Upon speaking with the hunters, Boyer learned that they were not properly wearing fluorescent orange while walking through the King Nature Reserve. He stated that, during antlered rifle deer season, the hunters were required to wear 250-square inches of fluorescent orange material on their head, chest, and back that was visible in a 360-degree arc. The hunters indicated that they were properly wearing orange once they got deeper into the woods and began hunting. Boyer disagreed, however, and stated that, under Pennsylvania law, the hunters began hunting once they possessed rifles and walked into the woods on the King Nature Reserve property. Moreover, he believed that they fulfilled the definition of hunting by doing an act in furtherance of the taking of game or wildlife. Therefore, they were not properly wearing orange as they began their hunt on the King Nature Reserve property. Boyer further discovered that [Co-defendant] was unlawfully in possession of a fulfilled doe tag. [Co-defendant] also admitted to walking through the King Nature Reserve property.

Additionally, Boyer testified that it is illegal to hunt with a rifle or firearm within 150 yards of any building that could be occupied. He stated that the area around the Westmoreland Conservancy property is very residential and it would be difficult to find safe hunting ground while on the property. Boyer also agreed that it would not make sense to walk from where they were parked across multiple plots of land where there is no hunting. He believed that the walk to their intended hunting destination was long.

George O'Mahony, who worked as a hunter-trapper education instructor for the Pennsylvania Game Commission, testified that on November 30, 2024, he saw [Appellant] and [Co-defendant] walking on a trail in the conservancy area. At that time, they were dressed in camouflage and holding a rifle. Neither of them was wearing the required 250-square inches of fluorescent orange at that time. He also stated there is access to the Consolidated Gas Corporation facility off Hills Church Road. He did not believe that it made sense for the hunters to park at the King Nature Reserve.

President of the Westmoreland Conservancy, Rachelle Tichy, testified that the King Nature Reserve is designated for wildlife habitat, nature study, and hiking. She stated that the property's boundaries are marked with wildlife safety zone signs. The Conservancy's hunting policies are also posted at kiosks located at all their reserves and are available online. The King Nature Reserve is a deed restricted property that prohibits hunting.

The Westmoreland Conservancy property is not owned by Murrysville and it is considered private property that is made available to the public under specific restrictions. Murrysville cannot grant permission to hunt or trespass on the Conservancy's property. Additionally, Tichy spoke with a sergeant from the Murrysville Police Department who indicated that [Appellant] and [Co-defendant] asked for permission to hunt on the Conservancy property, and they were told that they could not give permission to trespass.

[Co-defendant] testified that on November 30, 2024, he met with [Appellant] at the Kings Nature Reserve on Crow Foot Road. They planned on walking to the Consolidated Gas Corporation property located approximately one-half mile away to hunt, which was permitted. They began walking on a nature trail while carrying hunting gear. [Co-defendant] believed that they were not trespassing because they had been to that property before and it

was open to the public. They also spoke with the chief of police and a detective who indicated that they would not be trespassing if they were transporting their gear through the property.

Ultimately, [Co-defendant] was unable to make it to the Consolidated Gas Corporation property due to his bad knee. He walked back along the nature trail and proceeded to a different property to hunt. [Appellant] and [Co-defendant] subsequently walked back to their vehicles together. [Co-defendant] stated that they were both properly wearing orange while hunting. They did not have any intention of hunting on the King Nature Reserve.

[Co-defendant] agreed that travelling through the King Nature Reserve was not the easiest way to get to the Consolidated Gas Corporation property. He stated, however, that neighboring landowners experienced issues with people parking in their lots. [Co-defendant] testified that there was another section of land that they could access, but they began constructing houses on it. The only other way to get to the property involved travelling one mile away from Crow Foot Road. [Co-defendant] also stated that, prior to going to the King Nature Reserve, they spoke with local police and asked if they had permission to walk on the trail as a hiker carrying their gear.

[Appellant] agreed with [Co-defendant's] description of what occurred.

Trial Ct. Op. 11/19/25, at 1-8 (some formatting altered and citations omitted).

On May 8, 2025, Appellant was convicted following a trial before a Westmoreland County Magisterial District Judge for one count of trespass on private property while hunting and two counts of violating a game commission regulation. Appellant filed a summary appeal on May 28, 2025.

A *de novo* summary appeal trial was held in the Westmoreland County Court of Common Pleas on August 26, 2025, wherein Appellant proceeded *pro*

- 4 -

*se*.[2]  At the conclusion of the trial, the Court found Appellant guilty of trespass on private property while hunting and violating a game commission regulation.[3]  The trial court sentenced Appellant to pay a $350 fine.[4]

Appellant filed a timely notice of appeal.  Both Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant raises the following issue for our review:

_____

[2] It is well established that the right to counsel in summary cases "attaches only to those defendants who are unable to employ counsel when there is a likelihood that imprisonment will be imposed." **Commonwealth v. Smith**, 868 A.2d 1253, 1256 (Pa. Super. 2005) (citations omitted and some formatting altered).  We note that trespass on private property while hunting under 34 Pa.C.S. § 2314(a)(1) is currently a summary offense of the second degree.  **See** 34 Pa.C.S. § 2314(c)(1) (effective date Sept. 8, 2025).  Summary offenses of the second degree are punishable by up to one month of incarceration.  **See** 34 Pa.C.S. § 925(b)(6).  However, at the time of the offense, trespass on private property while hunting under 34 Pa.C.S. § 2314(a)(1) was a summary offense of the third degree.  **See** 34 Pa.C.S. § 2314(c)(1) (effective date Feb. 25, 2020).  Summary offenses of the third degree carry a maximum sentence of a five hundred dollar fine and, importantly, are not punishable by incarceration.  **See** 34 Pa.C.S. § 925(b)(7).  Accordingly, because the offense was not punishable by incarceration at the time that Appellant committed the offense, Appellant was not entitled to counsel.  **See Smith**, 868 A.2d at 1256 (concluding that "the right to counsel did not attach as imprisonment was not a possible penalty").

[3] Appellant was acquitted of the second count of violating a game commission regulation.  **See** N.T., 8/26/25, at 82.

[4] We note that Appellant was not entitled to file a post-sentence motion.  **See** Pa.R.Crim.P. 720(D) (stating "[t]here shall be no post-sentence motion in summary case appeals following a trial *de novo* in the court of common pleas.  The imposition of sentence immediately following a determination of guilt at the conclusion of the trial *de novo* shall constitute a final order for purposes of appeal").

> The trial court's verdict was contrary to the actual definition of hunting and was entered against the weight of the evidence and testimonies.

Appellant's Brief at 10 (unpaginated).[5]

Before reaching the merits of Appellant's claim, we must first address whether the issue is waived. *See Commonwealth v. Edmondson*, 718 A.2d 751, 752 n.7 (Pa. 1998) (stating that appellate courts can raise issues of waiver *sua sponte*).

This Court has previously addressed the preservation of a weight-of-the-evidence claim in a summary appeal case as follows:

> While Pa.R.Crim.P. 720(D) prohibits preservation of a weight of the evidence claim via post-sentence motion [in a summary appeal case], it does not vitiate a defendant's responsibility to preserve such challenges before the trial court. *See Commonwealth v. Dougherty*, 679 A.2d 779, 784 (Pa. Super. 1994) (stating that appellant's challenge to the weight of the evidence in a summary appeal was preserved where the "trial [court] explicitly addressed . . . weight of the evidence at the close of appellant's trial," in the absence of post-sentence motions). Additionally, Pa.R.Crim.P. 607(A) states that a challenge to the weight of the evidence may be preserved orally, on the record, or by written motion at any time before sentencing. *See* Pa.R.Crim.P. 607(A)(1), (2); *see also* Pa.R.Crim.P. 607 Cmt. (stating "[t]he purpose of this rule is to make it clear that a challenge to the weight of the evidence must be raised with the trial judge or it will be waived.").

*Commonwealth v. Schooley*, 1101 MDA 2020, 2021 WL 1424244, at *5 (Pa. Super. filed Apr. 15, 2021) (unpublished mem.) (some formatting

---

[5] As will be discussed further below, because Appellant's brief does not contain a statement of questions section, this claim was derived from the header of the argument section of Appellant's brief. *See* Appellant's Brief at 10.

altered).[6]  A weight-of-the-evidence claim is waived if it is not first presented to the trial court.  ***See id.***; ***see also*** Pa.R.Crim.P. 607.

Additionally, where an appellate brief's deficiencies impede this Court's ability to review, we may find the issues raised therein waived.  ***See Commonwealth v. Gould***, 912 A.2d 869, 873 (Pa. 2006).  "It is an appellant's duty to present arguments that are sufficiently developed for our review.  The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities." ***Commonwealth v. Hardy***, 918 A.2d 766, 771 (Pa. Super. 2007) (citations omitted and some formatting altered); ***see also*** Pa.R.A.P. 2119(b)-(e).  This Court will not act as an advocate for an appellant and, therefore, will not consider issues that are not fully developed in an appellate brief.  ***See Gould***, 912 A.2d at 873.  "When an appellant cites no authority supporting an argument, this Court is inclined to believe there is none."  ***See Commonwealth v. Reyes-Rodriguez***, 111 A.3d 775, 781 (Pa. Super. 2015) (citation omitted).  Further, "it is a well settled principle of appellate jurisdiction that undeveloped claims are waived and unreviewable on appeal." ***Commonwealth v. Clayton***, 816 A.2d 217, 221 (Pa. 2002) (citation omitted).

Finally, "although this Court is willing to liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon the

---

[6] ***See*** Pa.R.A.P. 126(b) (stating this Court may rely on unpublished decisions of this Court filed after May 1, 2019, for their persuasive value).

appellant." ***Commonwealth v. Adams***, 882 A.2d 496, 498 (Pa. Super. 2005) (some formatting altered). *Pro se* litigants are bound by the Pennsylvania Rules of Appellate Procedure. ***See id.*** at 497-98. "Any person choosing to represent himself in a legal proceeding must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing." ***See id.*** at 498 (some formatting altered).

Here, as the trial court notes, Appellant did not raise a challenge to the weight of the evidence in a pre-sentence motion or orally prior to or during sentencing. ***See*** Trial Ct. Op. at 14; ***see also*** N.T., 8/26/25, at 82-84. Since Appellant failed to preserve his weight of the evidence claim in the trial court, we find it waived on appeal. ***See Schooley***, 2021 WL 1424244, at *5; Pa.R.Crim.P. 607.

Further, even if Appellant's claim was not waived for failing to raise it in the trial court, we would find it waived due to an undeveloped appellate brief. ***See Gould***, 912 A.2d at 873; ***Clayton***, 816 A.2d at 221. As stated above, Appellant's brief does not contain a statement of questions. ***See*** Pa.R.A.P. 2111(a)(4) (stating that an Appellant's brief "shall" include a statement of the questions involved section). Further, the statement of scope and standard of review, summary of the argument, and argument sections of his brief do not contain a single record or case citation. ***See*** Appellant's Brief at 4-5, 8-13 (unpaginated); ***see also Hardy***, 918 A.2d at 771; ***Reyes-Rodriguez***, 111 A.3d at 781. Instead, Appellant makes various assertions about the evidence

at trial and the law governing this case that are unsupported by citations to the record, statutes, or case law.

For example, without a citation, Appellant asserts that "the standard of review in this case is solely limited to whether or not the court has jurisdiction and the authority to manipulate the law to where nothing more than assumptions are the legal standard of evidence in rendering a decision." *See* Appellant's Brief at 4. Further, Appellant claims the definition of "hunting is clear and precise" but fails to cite any authority defining the term. *See id.* at 10 (some formatting altered). Additionally, apparently taking issue with the signs posted by the King Nature Reserve, Appellant contends, without citation, that Pennsylvania "landowners do not have to post their properties, and it is not a prerequisite but once a land owner engages in posting, it must be done in a way that would not be considered confusing to the general public." *See id.* at 11 (some formatting altered). Accordingly, we conclude that Appellant's brief is woefully undeveloped and, therefore, impedes this Court's ability to review his claim on appeal. *See Hardy*, 918 A.2d at 771; *Reyes-Rodriguez*, 111 A.3d at 781; *see also Gould*, 912 A.2d at 873.

Here, Appellant filed a brief in which he raises claims of trial court error. However, Appellant has failed to meet multiple requirements for an appellate brief. *See* Pa.R.A.P. 2111(a)(3), (4), (6), (8); 2114; 2116(a); 2119. In sum, Appellant has not developed his claims of error or argument in any coherent or meaningful fashion and has failed to provide relevant legal authority for why this Court should disturb the trial court's order. *See Gould*, 912 A.2d at

873 (explaining that this Court will not act as an advocate for an appellant and, therefore, will not consider issues that are not fully developed in an appellate brief); **Adams**, 882 A.2d at 498 (stating that Appellant's *pro se* status provides him with no special benefit).  Under these circumstances, and given the substantial defects in Appellant's brief, we are unable to conduct a meaningful review of Appellant's claims.

For the reasons stated above, we find Appellant's issues on appeal waived.  **See Schooley**, 2021 WL 1424244, at *5; Pa.R.Crim.P. 607; **see also Gould**, 912 A.2d at 873; **Clayton**, 816 A.2d at 221.  Therefore, no relief is due.  Accordingly, we are constrained to dismiss this appeal.  **See** Pa.R.A.P. 2101; **Adams**, 882 A.2d at 498.

Appeal dismissed.    Judgment of sentence affirmed.    Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 7/1/2026